HARVESTER BUILDING AND LOAN ASSOCIATION OF NEWARK, NEW JERSEY, PLAINTIFF-APPELLANT, v. HANA ELBAUM AND SIMON ELBAUM, DEFENDANTS-RESPONDENTS.

Argued October 25 and 26, 1937—Decided January 26, 1938.

For the appellant, *Leber & Ruback*.

For the respondents, *Simon M. Seley.*

On the brief, *Lester Sandles* and *Richard E. Silberman.*

The opinion of the court was delivered by

WELLS, J. This is plaintiff's appeal from a judgment entered in the Essex County Circuit for the defendants, on an order striking the plaintiff's reply to the defendants' answer.

The facts as found in the plaintiff's pleadings and supporting affidavits were conceded as true for the purpose of the argument before the court below and will be accepted as true for the purpose of this appeal.

It appears that on July 20th, 1935, the plaintiff instituted foreclosure proceedings on a $14,000 mortgage given by the defendants, and three days later filed the *lis pendens.* In the latter part of August, the plaintiff, who, as a mortgagee had taken possession of the mortgaged premises previous to the institution of foreclosure proceedings, rented one of the two apartments to Louis and Agnes Brown. These tenants took possession on September 1st. On October 29th, of the same year. the subpœna in the foreclosure was tested and on November 7th served on the defendants. On March 1st, 1936, the assistant secretary of the plaintiff building and loan company served notice upon the tenants Louis and Agnes Brown to vacate the apartment on April 1st, 1936. On March 31st, the mortgaged premises were sold at sheriff's sale to the plaintiff for $100. At this sale the attorney for the plaintiff publicly announced that: "The within premises are sold subject only to taxes and assessments unpaid and a lien against said premises and such state of facts as an accurate survey would disclose and are specifically sold free of all tenancies or rights of tenants in the property and possession will be given upon delivery of the sheriff's deed." Sometime within the first week in April the tenants vacated the apartment. On April 11th, 1936, the sale was confirmed by the Chancellor and on May 5th, 1936, the deed was actually delivered.

Within the proper time, the plaintiff commenced its suit

in the Essex County Circuit Court on the bond against the defendants for the resultant deficiency. The defendants set up in their answer the failure of the plaintiff to make the Browns, the tenants, parties to the foreclosure suit, alleging that their leasehold was not cut off by the foreclosure decree and that plaintiff had not therefore exhausted its security before suing on the bond as provided in *Pamph. L. 1933, p.* 172. The plaintiffs moved to strike this defense as "sham and/or frivolous" and in support of this motion presented affidavits containing the facts above set forth. The court below denied this motion on the ground that the recent decision of this court in *American Italian Building and Loan Association* v. *Liotta,* 117 *N. J. L.* 467, was controlling.

The plaintiff thereafter filed a reply in which it alleged that: "At said sheriff's sale held on March 31st, 1936, neither the vendible value of the mortgaged lands and premises nor the bidding therefor was in any way lessened or affected by the circumstance that on that day there existed the aforementioned tenancy of Louis Brown, which tenancy was then subject to the force and operation of the aforementioned notice of termination and which tenancy actually terminated the following day, viz., April 1st, 1936, and approximately ten days before said sheriff's sale was duly confirmed by the Chancellor of the State of New Jersey." The defendants then moved to strike this reply as sham and frivolous. In opposition to this motion the plaintiff presented affidavits by its assistant secretary and a local real estate expert supporting the allegations set forth in its reply. The court below was of the opinion that the additional facts alleged in the reply and supported by affidavits did not free the instant case from the controlling force of the Liotta case, *supra,* and therefore granted the defendants' motion and struck the reply as frivolous.

In doing this, we think the court below failed to observe the material distinction between the instant case and the Liotta case. In the Liotta case, the plaintiff neither alleged in its pleading nor attempted to prove at the trial that the presence of the tenancy which was unaffected by the foreclo-

sure decree, had not lessened the vendible value of the mortgaged premises by deterring bidders at the time of the sheriff's sale. This is likewise true of the plaintiffs in cases similar to the Liotta case, such as *Polish Home Building and Loan Association* v. *Burinefsky,* 119 *N. J. L.* 1; *Guardian Life Insurance Co.* v. *Lowenthal (Supreme Court,* 1935), 13 *N. J. Mis. R.* 849; *Chodosh* v. *Schlesinger (Circuit Court,* 1936), 14 *Id.* 599.

In the absence of such allegation and proof, the presumption naturally arose in the above mentioned cases that since the presence of a tenant on the mortgaged premises, whose term was unaffected by the foreclosure decree, might deter a certain class of bidders at the sheriff's sale so that the best price would not be obtained, such tenancy did in fact cause such a result.

The· statute which is controlling in this case, is as follows:

"In all cases where a bond and mortgage has or may hereafter be given for the same debt, all proceedings to collect said debt shall be, first, to foreclose the said mortgage, and if at the sale of the mortgaged premises under said foreclosure proceedings the said premises should not sell for a sum sufficient to satisfy said debt, interest and costs, then and in such case it shall be lawful to proceed on the bond for the deficiency, and that all suits on said bond shall be commenced within three months from the date of the sale of said mortgaged premises, and judgment shall be rendered and execution issue only for the balance of debt and costs of suit." *Pamph. L.* 1933, *p.* 172.

" 'First, to foreclose the mortgage.' What does it mean? We are of the opinion that it means a foreclosure that will result in a complete exhaustion of the property and all interest therein," said Mr. Justice Perskie in speaking for this court in the Liotta case, wherein he adopted the reasoning stated and the construction placed upon the statute by Mr. Justice Lloyd in the case of *Deal Park Co.* v. *Bannard,* 2 *N. J. Mis. R.* 194. In the latter case (at *p.* 195), we find the following comment: "It seems to me that nothing short of a complete exhaustion of the property and all interests therein

must be had to satisfy the requirements of the statute. To hold otherwise would be to permit frauds upon the statute and upon the obligor, and frustrate the purpose of the law."

Now what is the purpose or reason for this statutory requirement to first "exhaust" the security completely? We believe that this reason is a practical rather than a theoretical one. The legislative intent, as interpreted by the courts, shows a desire that the mortgagee be first required to squeeze his security dry by securing the very best possible price for it at the sheriff's sale. If this is done, the property has been "exhausted" and the mortgagee may then proceed on the bond for the deficiency. "Indeed, the sum realized upon such a sale would be less by reason of the undivided nature of the tenure." *Deal Park Co.* v. *Bannard, supra* (at *p.* 195). "The failure to make the tenant a party may prevent the property from bringing the best possible price on the foreclosure sale." 42 *Corp. Jur.* 59, cited with approval in *Guardian Life Insurance Co.* v. *Lowenthal, supra* (at *p.* 851). "Be that as it may, it appears a complete sale was not effected and therefore the price obtained was not, possibly, the best price." *Chodosh* v. *Schlesinger, supra* (at *p.* 609). See, also, the Liotta case, *supra* (at *p.* 472).

Therefore it may be said that the mortgagee did exhaust his security in compliance with the statute if he can show that the apparent encumbrance which remained upon the premises at the time of the sale, unaffected by the foreclosure decree, was of such a nature that it did not prejudice the sale by deterring bidders nor lessen the vendible value of the mortgaged premises by depriving a purchaser of his right of possession under his deed, or otherwise.

In the instant case, the plaintiff alleges in his reply that a purchaser would secure complete possession, and by his supporting affidavits attempts to prove it. The affidavit of the local real estate expert states: "It is my opinion as a real estate expert that the occupancy of the one apartment by the tenant Brown could not and did not affect the vendible value of the property on the date of the sale." He then goes on to give his reasons, one of them being that the announcement by

the plaintiff's attorney at the sheriff's sale that the premises were being sold free of tenancies and that possession would be delivered with the deed "induces the free and unrestricted bidding by those persons who desire to buy the property free of the rights of tenants, for they assume the truth of the representation involved in the announcement and they bid on the assumption that if and when the sale is confirmed and a sheriff's deed delivered, possession will accompany the deed." The allegations of the reply supported by affidavits may or may not be true. However, we are of the opinion that they raised an issue of fact as to whether the presence of this tenancy under the surrounding circumstances did affect the vendible value of the mortgaged premises by deterring bidders.' Since reasonable men might differ as to the answer, it became a question for the trier of facts.

The judgment is, therefore, reversed, and cause remanded for further proceedings in conformity with this opinion.

*For affirmance*—THE CHIEF JUSTICE, PARKER, LLOYD, PERSKIE, RAFFERTY, JJ.    5.

*For reversal*—THE CHANCELLOR, CASE, BODINE, DONGES, HEHER, DEAR, WELLS, WOLFSKEIL, JJ.    8.