## JOHNSON v. UNITED STATES.

No. 44925.

Court of Claims.

June 2, 1941.

Before WHALEY, Chief Justice, and MADDEN, JONES, WHITAKER, and LITTLETON, Justices.

WHALEY, Chief Justice.

This is a suit for the recovery of income tax for the years 1934 and 1935. Recovery is sought not only on the ground of an alleged excessive amount of income determined by the Commissioner of Internal Revenue for these years but also on the ground that the Commissioner improperly exacted a fraud penalty from plaintiff.

During the years 1934 and 1935, and for some time prior thereto, plaintiff operated a billiard room in Asheville, North Carolina, and at the same time was engaged in operating a tip board in connection with which he took bets on baseball and football games. Both operations were carried on in adjoining rooms, but in so far as the income and expenses were concerned, they were kept substantially separate. The tip board operation was unlawful under the laws of North Carolina and the establishment was raided many times by law enforcement officers.

Plaintiff had his income tax returns for 1934 and 1935 prepared by a public accountant which disclosed net income in the respective amounts of $2,506.30 and $3,250.40. For those years plaintiff was married and living with his wife; he had two children under 18 years of age and his mother, who were dependent upon him for support. Since the amount of his personal exemption plus credits for dependents exceeded the amount of net income for each year, no tax was shown due and none was paid. However, in those returns only income and expenses from the billiard room were shown, no reference to income, expenses, or otherwise being made to his gambling activities in connection with the tip boards.

During 1936, the Commissioner of Internal Revenue caused jeopardy assessments to be made against plaintiff for the years 1934 and 1935 in the respective amounts of $4,278.37 and $3,001.36. In addition thereto, the Commissioner assessed a fraud penalty for each year of 50 percent of the amount of tax assessed plus interest, which made the amounts demanded from him $6,818.08 for 1934 and $4,602.93 for 1935. The amounts of income on which these assessments were made, or how they were determined, are not satisfactorily shown by the record. However, in response to the notice and demand for payment, plaintiff filed claims for abatement, and thereafter plaintiff employed a certified public accountant to prepare a report of income for those years, not only from his billiard parlor but also from the gambling operations. The certified public accountant computed a net income for 1934 from the billiard parlor of $6,798.27 and from the tip boards of $6,203.55, which, together with certain miscellaneous income, showed a total net income for 1934 of $14,774.32. For 1935, he determined a net income from the billiard parlor of $7,942.80 and from the tip boards of $2,332.52, which, together with certain miscellaneous income, produced a total net income for 1935 of $11,-149.13.

Further investigation was made by the Commissioner's revenue agents and conferences were held between them and representatives of plaintiff. As a result thereof, the Commissioner determined a net income for 1934 of $20,769.53 and for 1935 of $19,941.58, which amounts were substantially less than the amounts determined when the jeopardy assessments were made. As a result of that determination, the Commissioner reduced the tax liability for 1934 from $4,278.37 to $1,539.28, and for 1935 from $3,001.56 to $1,402.62. The fraud penalty was asserted on the reduced tax for each year which with the tax and interest made a total for 1934 of $2,453.10 and for 1935 of $2,151.14. Plaintiff paid these amounts on June 11 and 12, 1937, respectively.

September 3, 1937, plaintiff filed claims for refund for the years 1934 and 1935 in the respective amounts of $1,646.93 and $1,712.71, in which it was alleged the amount of income determined by the Commissioner was excessive and that plaintiff filed his returns without intent to evade the tax. The Commissioner rejected the claims for refund and this suit was timely instituted for recovery of the amounts sought therein.

At the final hearing for the presentation of proof, it was agreed that all items appearing in the statements prepared by plaintiff's accountant which showed a net income for 1934 of $14,774.32 and a net income for 1935 of $11,149.13 were correct except as to three items in 1934 and three similar items in 1935. The first of these items is "Depreciation of Equipment" where the plaintiff claims an amount of $871.14 for 1934 and $956.42 for 1935, whereas the Commissioner determined $467 for 1934 and $529.81 for 1935. Plaintiff in effect admits the correctness of the Commissioner's findings on this point and they are supported by the record.

The next item is also common to the two years and is described as "Expenses paid from Receipts before Deposits, Net," where a deduction is claimed of $1,559.13 for 1934 and $2,342.93 for 1935. In the operation of his billiard parlor plaintiff kept a cash register which showed in a cumulative manner the total receipts for each day, the total expenditures, and the net amount remaining in the cash register at the close of each day, the net amount being the difference between receipts and expenditures. The amounts claimed under this item represent the total expenditures in cash for each of the years in question from the cash register, but no record is available showing the items or purposes for which the expenditures were made other than that some of the expenditures were for cigars, cigarettes, and other merchandise purchased for sale and paid for in cash at the time of delivery. Obviously without more, the deductions cannot be allowed since deductions are a matter of legislative grace and it is incumbent on a taxpayer to show the nature of expenditures in order that a determination may be made whether they are allowable. As far as the record goes some of these expenditures might well be of a personal nature, for capital items, or for some other purpose not coming within the category of allowable deductions. Since we have no way of distinguishing between such parts of these amounts as may be allowable and those that may not be allowable, there is no alternative but to sustain the Commissioner's determination on these items.

The third item for each year is described as "Checks for Losses," wherein a deduction is claimed of $3,650 for 1934 and

108

$5,775 for 1935. These items relate to the gambling end of plaintiff's business and were determined in the following manner: After the jeopardy assessments had been made by the Commissioner, the accountant employed by him at that time undertook to make some analysis of plaintiff's bank deposits with the view of determining whether all the deposits from the tip board business represented income and what deductions could be made therefrom. During the two years in question plaintiff kept no books or records of any kind from which profits or losses could be determined. In examining the bank records, the accountant found the deposits which had been made and the canceled checks showing withdrawals from that account. The manner in which plaintiff operated its gambling business was to withdraw an amount from the bank immediately preceding a day when some sporting event such as a football game was taking place in order that he might have money to make up any deficiencies on account of bets which he was required to pay, and then after the event was over and all bets were paid he would deposit in the bank the amount he had on hand. On that theory plaintiff contends that the amount withdrawn to cover possible losses should be deducted from the total of his deposits even though no losses were sustained on a given sporting event, since a deposit of the amount on hand after the event would in effect be a mere duplication of the amount withdrawn rather than a gain realized on the operation. Again we are without sufficient proof to permit the allowance. The most we know is that an amount was withdrawn from the bank and two or three days later an amount somewhat larger, or in a few cases smaller, was deposited, but that does not carry conviction either that the amount withdrawn was used to pay losses or that the amount deposited includes the amount withdrawn. Taxpayers engaged in a legitimate business are required to keep records which will support deductions claimed in their returns and from which a determination can be made of the amount of profit or loss sustained in a given business. Certainly less should not be required of a taxpayer engaged in an unlawful business. Plaintiff's explanation of his failure to keep records or papers of some kind which would show more with respect to the items in question is that if some of this information had been found in his possession it would have assisted the law enforcement officers in prosecuting him. Be that as it may, when a taxpayer engages in an unlawful undertaking and in order to conceal what he is doing fails to keep proper records he cannot very well complain when, because of his own misdoing, he cannot get all the benefits to which he would otherwise be entitled.

On the further question whether the fraud penalty was properly asserted by the Commissioner, plaintiff concedes that the omission of such substantial amounts from his business justifies a fraud penalty but urges that that penalty should apply only to the portion of the unlawful business which was omitted from his returns and would not be applicable to the entire deficiency determined. The statute, section 293(b) of the Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Code, § 293(b), provides: "(b) Fraud. If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended [section 3612 (d) (2) ]."

Under the plain words of that statute, where any part of the deficiency is due to fraud with intent to evade tax the 50 per centum fraud penalty applies to the entire deficiency, which is what the Commissioner did in this case and must be sustained. Cf. Kenney v. Commissioner, 5 Cir., 111 F.2d 374.

The Commissioner's determination was based upon a net income of $20,769.53 for 1934 and $19,941.58 for 1935, whereas the net income as now determined after adjustment for the items referred to above which were disputed is $20,387.59 for 1934 and $19,693.67 for 1935, that is, a reduction in income for 1934 of $381.94 and for 1935 of $247.91. Since the income now determined is less than that determined by the Commissioner, plaintiff is entitled to judgment of the difference between the tax computed on the revised income and that determined by the Commissioner with the application of the fraud penalty thereto in a manner consistent with that applied by the Commissioner.

The entry of judgment in favor of plaintiff will be withheld pending a submission by the parties of computations consistent with this opinion.