### HARRIS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2335.

Circuit Court of Appeals, Tenth Circuit.

Dec. 15, 1941.

---

Chas. H. Garnett, of Oklahoma City, Okl. (W. K. Garnett, of Oklahoma City, Okl., on the brief), for petitioner.

Hubert L. Will, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Petitioner has appealed from a ruling of the Board of Tax Appeals denying him the right to deduct from his 1935 income tax, as an ordinary business loss incurred during the taxable year of 1935, the sum of $30,234.06, the difference between the cost of stock which he owned and the liquidating dividend received by him during that year.

On January 31, 1924, petitioner purchased 409 shares of the capital stock of the Main Street Arcade Company, a corporation, for a consideration of $22,620. On September 20, 1926, he purchased 240 additional shares at a cost of $9,600. The total capital stock of the company consisted of 1,500 shares of the par value of $100 each. Its principal asset was a business building known as the Main Street Arcade Building, in Oklahoma City, Oklahoma. Other assets of the company were inconsequential in amount. The company had placed a $90,000 mortgage on the building. It defaulted in the payments, and on May 2, 1935, the Prudential Insurance Company, the holder of the mortgage, instituted an action in a District Court of the State of Oklahoma praying judgment against the company in the sum of $78,815.30, together with interest thereon from May 1, 1935. It asked for a foreclosure of the mortgage lien and for a sale of the property as by law provided, in the event the amount of the claim was not paid.

On May 11, 1935, a receiver was appointed by the court to take charge of the property and receive the rents during the period of the litigation. On July 12, 1935, a judgment was entered against the company for $78,815.30, together with interest at ten per cent from May 1, 1935, and attorneys' fees in the sum of $750, and for the costs of the suit. The judgment provided for the sale of the property if the amount found due was not paid within six months from the rendition thereof. On January 13, 1936, an order of sale was issued and on February 17, 1936, the property was sold to the plaintiff for $57,000. This amount was credited on the judgment. On February 28, 1936, the receiver filed his report showing that the sum of $3,608.37 then remained in his possession as proceeds of his receivership. He was allowed $450 as a fee and the balance was paid on the judgment in the foreclosure action. The balance of the judgment has not been paid.

Petitioner contends that the stock became wholly worthless in 1935 and its cost is therefore deductible as an ordinary business loss under Section 23(e) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Code § 23(e). The institution of the suit to foreclose the mortgage was not such an identifiable event as of itself established the worthlessness of the stock of the corporation. Nickoll v. Commissioner, 7 Cir., 103 F.2d 619; Commissioner v. Hawkins, 5 Cir., 91 F.2d 354. On May 10, 1935, the Board of Directors met and voted a liquidating dividend of $2.56 per share. This was paid in the total amount of $3,840, of which petitioner received $1,661.44. On December 6, 1935, the Board of Directors voted an additional liquidating dividend of fifty cents per share. On this distribution petitioner received the additional sum of $324.50. Petitioner now takes the rather unique position that these dividends should not be considered as evidence of value of the stock, because they were declared in fraud of creditors, and he therefore was not entitled to retain them as his own, but held them as trustee for the rightful parties—a strange position, indeed. Apparently no one else is making this claim. Neither is the self-declared "trustee" bestirring himself to discharge the trust by paying the trust funds to those entitled to receive them. All his energy seems to be expended in resisting the payment of income taxes on account of the funds which he says he has wrongfully received, but is making no effort to relinquish. It does not, however, necessarily follow from the record that the Board of Directors was motivated by fraud in the payment of the liquidating dividends. The minutes of the Board of May 10, 1935, show that the Board considered the value of the property equal to the indebtedness. In fact, it considered that the property had a potential equity above the indebtedness.

It directed its attorney to delay the foreclosure proceedings in the hope that there might be a considerable increase in the value of the real estate before final sale. Whether the liquidating dividends were paid in fraud of creditors is, however, not an issue in this case and is therefore not decided.

The burden was upon the taxpayer to establish that the stock became worthless in 1935, Lambert v. Commissioner, 10 Cir., 108 F.2d 624, and we concern ourselves with that question alone. The balance sheet of the company on January 1, 1935, showed total assets of $253,508.97, and liabilities of $114,993.25. The balance sheet of January 1, 1936, reported assets of $249,741.26, and liabilities of $118,235. In 1934 the company had a net operating profit of $1,143.70, and in 1935 a net operating profit of $1,743.39.

It is our conclusion that petitioner failed to discharge the burden which was his to establish that his stock in fact became worthless in 1935.

The decision is therefore affirmed.