## STAMLER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8523.

Circuit Court of Appeals, Third Circuit.
Argued Jan. 21, 1944.
Decided Sept. 29, 1944.

38

Sydney A. Gutkin, of Newark, N. J., for petitioner.

S. Dee Hanson, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before JONES and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

JONES, Circuit Judge.

The question here involved is whether certain losses which the petitioning taxpayer deducted in full in his income tax return for the year 1935 constituted ordinary losses, as he argues, or whether they were capital losses as the Commissioner of Internal Revenue held them to be. The extent of their deductibility, as capital losses, being limited by Secs. 23 (j) and 117 (d) of the pertinent Revenue Act, Act of 1934, 26 U.S.C.A. Int.Rev.Acts pages 673 and 708, the Commissioner readjusted the taxpayer's return accordingly and determined a deficiency in tax for the year in question. The Tax Court sustained the Commissioner's determination and the matter is now before us on the taxpayer's petition for a review of the Tax Court's decision.

The question as to the character of the losses suffered by the taxpayer, so far as their deductibility from gross income is concerned, arises out of two different transactions, the one involving certain real estate and, the other, stock in a corporation.

(1) The taxpayer owned an undivided one-third interest in certain improved real estate. His brother, who was also his law partner, owned the remaining interest in the property which had been purchased by them at a total cost of $170,067.40 of which the taxpayer had paid one-third. For twenty-five years he had bought and sold for himself numerous pieces of real estate.

The property in question was subject to a mortgage held by a trust company in an original amount of $65,000. As additional security for the payment of the mortgage debt the taxpayer and his brother on June 3, 1928, gave the mortgagee their personal bond in a sum exceeding $65,000.

Default under the mortgage, both as to interest and taxes, having occurred by 1935, in the early part of January of that year the president of the trust company (mortgagee) discussed with the taxpayer the matter of his liability on the bond. After further conversations with representatives of the mortgagee company, the owners on January 23, 1935, conveyed the property to the mortgagee by a deed which recited that the conveyance was "in lieu of its [the mortgagee's] instituting foreclosure proceedings upon its mortgage." The consideration recited in the deed was "one dollar and other good and valuable considerations." The deed was recorded on February 19, 1935. At that time the unpaid balance of the mortgage debt together with accumulated interest thereon amounted to $60,881.01. The deed contained no express provision releasing the taxpayer from liability on the bond but it did recite, inter alia, that:

"The parties of the first part [the owners] specifically represent and covenant that the unpaid principal due upon the bond and mortgage above referred to with accrued interest, taxes, and municipal liens represent the present fair market value of the premises, .* * *."

On October 29, 1935, the taxpayer conveyed to the mortgagee a plot of land (contiguous to the mortgaged property) which the mortgagee needed to facilitate the use of a loading platform in the rear of the mortgaged property and for parking space. It was shortly after the deed for the mortgaged premises had been recorded that the grantee first learned that the lot was not covered by either the mortgage or the original deed. The consideration recited in the deed for the lot was "one dollar and other good and valuable considerations."

(2) In 1924 the taxpayer purchased shares of stock of a certain company, known as the Colonial Holding Company, at a cost of $25,000. The principal asset of the company was an urban business property. Subsequently the taxpayer advanced $25,000 to the company as his contribution toward the payment and cancellation of a $100,000 second mortgage on the property.

In 1934, because of a falling off in the number of tenants of the property, the income derived from it was insufficient to pay the taxes on the property and interest on an existing first mortgage of $340,000. The mortgagee thereupon instituted foreclosure proceedings which were completed in 1935 when a deed for the property was executed by the sheriff to the purchaser at the foreclosure sale.

During 1934 and 1935 the officers of the company, who, apparently, were its only stockholders, caused the company's cash to be distributed to themselves in the form of loans. The taxpayer, as a stockholder, shared in this allocation of the company's funds. The closing entry in the company's books on December 31, 1935, showed receivables (including the loans to its officers and stockholders) of a certain amount which was closed out by a journal entry (for like amount) debiting the capital stock account and crediting the loans receivable account. No assets remained in the company after this closing entry. The company was not formally dissolved and no certificate of dissolution was filed.

In sustaining the Commissioner's deficiency determination the Tax Court held (1) that the taxpayer's transfer of his undivided interest in the mortgaged real estate to the mortgagee in 1935 constituted a sale or exchange of his interest in the property which, under the pertinent provisions of the applicable Revenue Act, resulted in a capital loss, and (2) that the distribution to the stockholders of the Holding Company (including the taxpayer) in 1935, were, in their intended effect, liquidating dividends which resulted in a capital loss to the taxpayer on his stock in the company. We think that the Tax Court's decision must be sustained in both particulars.

■ That the petitioner's interest in the mortgaged property was a capital asset is, of course, not open to dispute. It falls directly within the definition of a capital asset as contained in Sec. 117 (b) of the Revenue Act of 1934. The only question is whether the transaction was a sale or exchange of the asset. Where a mortgagor transfers his equity of redemption in property to the mortgagee in return for a release of liability on an accompanying bond given to evidence or further secure the mortgage debt, the transaction constitutes a sale or exchange of a capital asset. Rogers v. Commissioner, 9 Cir., 103 F.2d 790, 792, certiorari denied 308 U.S. 580, 60 S.Ct. 98, 84 L.Ed. 486, rehearing denied 308 U.S. 635, 60 S.Ct. 135, 84 L.Ed. 528; Pender v. Commissioner, 4 Cir., 110 F.2d 477, 478, certiorari denied 310 U.S. 650, 60 S.Ct. 1103, 84 L.Ed. 1416; Wieboldt v. Commissioner, 7 Cir., 113 F.2d 384, 386; C. L. Gransden & Co. v. Commissioner, 6 Cir., 117 F.2d 80, 81; Aberle v. Commissioner, 3 Cir., 121 F.2d 726 (C.C.A. 3);

Richter v. Commissioner, 2 Cir., 124 F.2d 412, 413.

■ The applicability of the rule, as above stated, to the present circumstances depends upon whether there was a consideration for the petitioner's transfer of his interest in the mortgaged property. The Tax Court found that there was. The intent to be gathered from the recitals of the deed, to which the grantee by its acceptance of the deed impliedly assented, was that the petitioner should be released from his liability on the bond. In this connection, the Tax Court also found that the subsequent conveyance of the adjoining lot of ground was but an integral part of the original transaction. These findings involve determinations of fact which a Court of Appeals, upon review, is not at liberty to disturb if there is a rational basis for the findings in the record. Dobson v. Commissioner, 320 U.S. 489, 501, 64 S.Ct. 239; Elmhurst Cemetery Company v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491.

■ We think the record discloses ample justification for the Tax Court's findings. The subsequent deed for the adjoining lot, which was indispensable to the full use of the mortgaged property, did no more than effectuate what the mortgagee had thought it was obtaining by the first deed which carried with it a release of the taxpayer's personal liability on the bond as we shall later point out. The testimony elicited by leading questions of petitioner's counsel that the deed for the additional lot was the consideration for the release of the grantor's liability on the bond was properly treated by the Tax Court as amounting "merely to conclusions as to the legal effect of the transfers".

■ The bond itself was not intended to provide anything more than security for the payment of the mortgage debt, interest, taxes, etc.; and the deed expressly indicated that it was designed to obviate a foreclosure. Under the law of New Jersey (the situs of the property), until there had been a foreclosure and a resultant sale of the property, the mortgagee could not establish a deficiency liability against the taxpayer on his bond. N.J.S.A. 2:65–2; Keer v. New Jersey Title Guarantee & Trust Co., 115 N.J.Eq. 388, 389, 170 A. 887. Moreover, the deficiency for which judgment on a bond may be obtained after a foreclosure sale of mortgaged property is only so much

40

as the debt, interest, taxes and costs exceed the value of the foreclosed property. Harvester B. & L. Ass'n v. Elbaum, 119 N.J.L. 437, 441, 196 A. 709. Here, according to the owners' recitals in the deed to which the grantee assented by its acceptance of the deed, "the unpaid principal due upon the bond and mortgage * * * with accrued interest, taxes, and municipal liens represent [ed] the present fair market value of the premises, * * *." Having avoided a determination of the property's value at a foreclosure sale, which incidentally would have worked a "sale or exchange" of the property within the contemplation of the Revenue Act (see Helvering v. Hammel, 311 U.S. 504, 506, 61 S.Ct. 368, 86 L.Ed. 303, 131 A.L.R. 1481; Electro-Chemical Engraving Co. v. Commissioner, 311 U.S. 513, 514, 61 S.Ct. 372, 85 L.Ed. 308), the grantee would be estopped upon a later suit on the bond for a deficiency from asserting, contrary to the recitals of the deed, that the value of the property did not cover all that the bond had been given to secure. Thus, the conduct of the parties in the giving and receiving of the deed for the mortgaged property legally effected the release of the mortgagor from liability on the bond. Such was likewise the intent of the parties in fact as the Tax Court found.

In the cases cited by the petitioner, there was no personal liability upon the transferring mortgagor. Consequently consideration for the conveyance by way of release from personal liability was not present. Cf. Polin v. Commissioner, 3 Cir., 114 F.2d 174, 176; Commissioner v. Hoffman, 2 Cir., 117 F.2d 987; Commonwealth, Inc. v. Commissioner, 36 B.T.A. 850, 852; Baird v. Commissioner, 42 B.T.A. 970, 975.

As to the distributions made by the Colonial Holding Company to its stockholders (one of whom was the taxpayer) by way of loans, we think the Tax Court's ruling that, under the circumstances shown, the distributions constituted liquidating dividends which resulted in a capital loss to the taxpayer on his stock is so manifestly correct as not to require discussion. Cf. Kennemer v. Commissioner, 5 Cir., 96 F.2d 177, 179; Harris v. Commissioner, 10 Cir., 124 F.2d 480, 481; Ward M. Canady, Inc., v. Commissioner, 3 Cir., 76 F.2d 278, certiorari denied 296 U.S. 612, 56 S.Ct. 131, 80 L.Ed. 434.

The decision of the Tax Court is affirmed.