Joe Silverman and Rose Silverman v. Commissioner. Joe Silverman v. Commissioner.
Silverman v. Comm'r
Docket Nos. 2950-67, 2698-68, 2718-68.
United States Tax Court
T.C. Memo 1971-143; 1971 Tax Ct. Memo LEXIS 190; 30 T.C.M. (CCH) 617; T.C.M. (RIA) 71143; June 16, 1971, Filed. Frank L. Silverman, 258 Broadway, New York, N. Y., for the petitioners. Marlene Gross, for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: The respondent determined deficiencies in income tax and additions to tax as follows: Joe Silverman, Docket No.
2718-68
Addition to Tax,
Year
Deficiency
Sec. 6653(b)
1958
$116,714.92
$58,357.46
1959
3,065.10
1,532.55
1960
8,964.25
4,482.12
1961
8,788.97
4,394.48
1962
5,796.99
2,898.49
Joe Silverman and
Rose Silverman,
Docket No. 2950-67
Addition to Tax,
Year
Deficiency
Sec. 6653(b)
1963
$39,826.33
*03$19,913.17
Joe Silverman and
Rose Silverman,
Docket No. 2698-68
Addition to Tax,
Year
Deficiency
Sec. 6653(b)
1964
$729.28
$364.64
1965
873.21
436.61
*191 During the course of trial, respondent moved for permission to amend its answer to seek an increased deficiency in income tax for taxable years 1958 through 1963 to conform the pleadings to the proof which showed additional interest income in each of said taxable years. The Court granted permission for respondent to seek increased deficiencies for each of said taxable years, waived the filing of a formal amended answer, and instructed respondent to claim said deficiencies in his brief. The questions presented for decision are as follows: (1) Whether petitioner Joe Silverman had unreported taxable income during taxable years 1958 through 1965 from unexplained deposits in various savings banks and a checking account, and if so, the amount thereof. (2) Whether petitioner Joe Silverman received unreported taxable interest income in taxable years 1958 through 1965, and if so, the amount thereof. (3) Whether petitioner Joe Silverman received unreported dividend income in the amount of $236.75 from Schenley Industries, Inc. and in the amount of $180 from Pan American World Airways, Inc. in taxable year 1958. (4) Whether petitioner Joe Silverman realized unreported capital gain *192 income in the amount of $3,897.49 from the sale of stock in taxable year 1958. (5) Whether petitioner Joe Silverman had unreported taxable income in the amount of $133,036.15 upon the withdrawal of said amount from his wholly owned corporation in taxable year 1958. (6) Whether any part of the underpayment of tax for each of the taxable years 1958 to 1965, inclusive, was due to fraud. (7) Whether the statute of limitations bars the assessment and collection of the deficiencies due and owing from the petitioners for taxable years 1958 through 1962 and for the taxable year 1964. Petitioners concede that unreported interest income was realized in taxable years 1958 through 1965. Respondent conceded that $10,000 of the $12,038.31 of unexplained deposits in taxable year 1962 was not taxable income but represented a transfer of funds from one savings account to another. On the basis of evidence (which evidence was summarized by respondent's agent at trial) presented to it subsequent to the issuance of the statutory notice of deficiency for taxable year 1963, respondent has also conceded that $41,416.25 of the $78,629.43 adjustment (due to unexplained deposits) increasing taxable *193 income in the taxable year 1963 was not taxable income but represented transfers of funds from various savings accounts, namely, the Union Square Savings Bank, [1] Account Nos. XX2209 and XX6706; the Williamsburgh Savings Bank, Account No. XXX1429; and the Dime Savings Bank of Williamsburgh, Account No. XX2943. Respondent also claims additional deficiencies in income tax and additions to the tax for the taxable years 1958 through 1963 on account of additional interest credited to petitioner Joe Silverman during these years from these four savings accounts, claim for which was made at the hearing of this matter pursuant to the provisions of section 6214(a). [2] 619 Findings of Fact Some of the facts have been stipulated. The stipulation of facts and supplemental stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Joe Silverman and Rose Silverman are husband and wife who, at the time of the filing of the petitions herein, resided *194 in New York, New York. Joe Silverman filed an individual income tax return for the taxable year 1958 with the district director of internal revenue, New York, New York. Joe Silverman and Rose Silverman [3] filed joint Federal income tax returns for the taxable years 1963, 1964, and 1965 with the district director of internal revenue, New York, New York. Neither Joe Silverman nor Rose Silverman were [was] employed, or engaged in business, during the taxable years 1958 to 1965, inclusive. They kept no formal books or records and made available only some bank statements. Joe Silverman (hereinafter referred to as petitioner) maintained a personal checking account, checking Account No. X-X1281, at the Manufacturers Trust Co., [4] 37 Avenue B, New York, New York. At various times during the period from 1958 through 1965, petitioner also maintained throughout the City of New York savings accounts in his own name or in trust for his *195 wife, Rose Silverman, including accounts with the Bowery Savings Bank, the New York Bank for Savings, the Central Savings Bank in the City of New York, the Union Square Savings Bank, the Greenwich Savings Bank, the Dry Dock Savings Bank, the Manhattan Savings Bank, the Emigrant Industrial Savings Bank, the Edison Savings and Loan Association, the Williamsburgh Savings Bank, the Bankers Federal Savings and Loan Association, and the Dime Savings Bank of Williamsburgh. During the taxable years 1958 to 1965, inclusive, petitioner made deposits in and withdrawals from his personal checking account at the Manufacturers Trust Co. and the various known savings accounts referred to above without maintaining any records which would show the source of the funds deposited. With the exception of the year 1958, such deposits did not, however, exceed the funds available to petitioner from known sources, including interest, dividends, proceeds from the sale of stocks, and proceeds from the sale of the property of Sheriff Realty Co., Inc., a corporation, the stock of which was wholly owned by petitioner. During the taxable year 1958, and prior to the sale of the property of Sheriff Realty Co., *196 Inc., petitioner made deposits of $12,609.31 in the following accounts: Jan. 6
$ 2,000.00
Manhattan Savings Bank Account No. XX4823
July 8
1,109.31
Manhattan Savings Bank Account No. XX4823
July 10
3,500.00
Manhattan Savings Bank Account No. X5352
Aug. 19
1,000.00
Greenwich Savings Bank Account No. XXX1474
Aug. 19
1,000.00
New York Bank for Savings Account No. XX7675
Sept. 3
4,000.00
New York Bank for Savings Account No. XX7675
Total
$12,609.31 Said deposits of $12,609.31 exceed the funds available to petitioner from known sources. During the taxable years 1958 to 1965, inclusive, petitioner failed to include in his Federal income tax returns interest received on account of the various savings accounts referred to above, as follows: Interest
Interest
Balance Not
Year
Received
Reported
Reported
1958
$3,249.91
$3,249.91
1959
6,939.22
6,939.22
1960
7,919.71
7,919.71
1961
8,495.40
8,495.40
1962
9,709.51
9,709.51
1963
6,250.77
$ 4,821.13
1,429.64
1964
5,552.64
2,248.69
3,303.95
1965
5,613.36
2,173.59
3,439.77
During the taxable year 1958, petitioner sold 321 shares of stock in Schenley *197 Industries, Inc. and 300 shares of stock in Pan American World Airways, Inc. Petitioner realized capital gains in the taxable year 1958 on account of said sales as follows: 620 Long
Term
Capital
Gain
Date
Shares
Cost
Date
Sales
Gain
Bought
Sold
Price
Schenley
Industries,
Inc.
11/17/52
200
$4,189.00
10/6/58
$7,453.41
$3,264.41
11/ 8/57
100
2,094.50
9/2/58
3,000.00
905.50
8/28/57
5
104.73
9/5/58
157.50
52.77
*132/10/58
15
314.18
10/9/58
564.45
250.27
Pan
American
World
Airways,
Inc.
3/19/50
100
$ 975.00
10/7/58
$2,141.14
$1,166.14
1/19/50
200
1,950.00
10/7/58
4,084.29
2,134.29
Long Term Capital Gain
$7,773.38
Less Sec. 1202 Deduction
3,886.69
Balance
$3,886.69
Short Term Gain
Schenley Industries, Inc.
3/17/58
1
$ 20.95
9/ 3/58
$ 31.75
$ 10.80
Capital Gain Income
$3,897.49
Petitioner did not report any portion of said gain in his income tax return for the taxable year 1958. During 1958, petitioner realized dividend income on his Schenley Industries, Inc. stock in the amount of $236.75 *198 and realized dividend income on his Pan American World Airways, Inc. stock in the amount of $180. None of this income was reported in his 1958 income tax return. On or about March 15, 1943, 90- 4 Sheriff Realty Co., Inc. was orgainzed and acquired title to certain property known as 90-4 Sheriff Street in the Borough of Manhattan, New York City. The cost of acquiring the property amounted to $87,689.56, computed as follows: Obligations Assumed:
Mortgage
$60,064.56
Due on appliances
2,500.00
$62,564.56
[5] Exchange - 286-8 East Third Street Cost
$36,000.00
Less: Mortgage
$26,175.00
9,825.00
Cash Paid
15,300.00
Total Acquisition Cost
$87,689.56
As of October 21, 1958, 90-4 Sheriff Realty Co., Inc. sold the property in question to the New York City Housing Authority for the sum of $135,000. After settlement charges and payment of the balance of $28,990.51 due on the mortgage then held by petitioner *199 Rose Silverman, the corporation received a check for $103,703.24. Both the payment to the corporation and the payment to petitioner Rose Silverman were deposited in the corporate checking account of XX-X Sheriff Realty Co., Inc. Between October 21 and December 31, 1958, petitioner withdrew $133,036.15 from said account, and thereafter withdrew the remainder completely liquidating the account. From and after October 21, 1958, 90-4 Sheriff Realty Co., Inc. transacted no business and had no assets other than its checking account. In the return filed by the corporation for the calendar year 1958, the sale of the property was not disclosed. There was no notation that the corporation had ceased to do business. Returns were not filed by the corporation for any subsequent years, and its charter was duly forfeited for nonpayment of taxes. The basis of the stock in the hands of the petitioner amounted to $25,125, arrived at as follows: Cash paid
$15,300
Equity basis in transferred property
9,825
Basis for Stock
$25,125
As a result of the distribution and liquidation of the corporation, the petitioner 621 realized a long-term capital gain in the amount of $78,578.24, *200 being the difference between the amount received ($103,703.24) and his basis for the stock ($25,125). Ultimate Findings of Fact (1) In the taxable year 1958, petitioner had taxable income of $12,609.31 from unknown sources, as evidenced by bank deposits, which was not reported in his individual tax return for that year. (2) In the taxable year 1958, petitioner realized taxable gain from the sale of securities in the amount of $3,897.49, which was not reported in his individual tax return for that year. (3) In the taxable year 1958, petitioner received taxable dividends of $416.75, which were not reported in his individual tax return for that year. (4) In the taxable year 1958, petitioner realized a taxable gain of $39,289.12 on account of distributions in liquidation of 90-4 Sheriff Realty Co., Inc., which was not reported in his individual tax return for that year. (5) In the taxable year 1958, petitioner received interest in the amount of $3,249.91, which was not reported in his individual tax return for that year. (6) In the taxable years 1959 to 1962, inclusive, petitioner received taxable interest in the amounts set forth below. Year
Amount
1959
$6,939.22
1960
7,919.71
1961
8,495.40
1962
9,709.51
*201 Petitioner did not file a tax return for any of the years 1959 to 1962, inclusive. (7) In the taxable years 1963 to 1965, inclusive, petitioner received taxable interest, which was not reported in his joint tax returns filed by petitioner and Rose Silverman in the following amounts: Interest Not
Year
Reported
1963
$1,429.64
1964
3,303.95
1965
3,439.77
(8) A part of the underpayment of tax by petitioner required to be shown on a return for each of the taxable years 1958 to 1965, inclusive, was due to fraud within the meaning of section 6653(b). Therefore, assessment of the tax and penalties for such years is not barred by the statute of limitations. Section 6501(c)(1). Opinion At the outset, it must be recognized that the method of reconstruction of a taxpayer's unreported income lies with the Commissioner and not with the taxpayer. Herbert Schellenbarg, 31 T.C. 1269 (1959); United Dressed Beef Co., 23 T.C. 879 (1955). The Commissioner may use any method of reconstruction which properly reflects income, and one method is not to be *202 preferred to another. Miller v. Commissioner, 237 F. 2d 830 (C.A. 5, 1956), affirming on this point a Memorandum Opinion of this Court. It is clear that the bank deposit method of reconstructing income is an appropriate one. Bishoff v. Commissioner, 27 F. 2d 91 (C.A. 3, 1928); Johnson v. United States, 39 F. Supp. 103 (Ct. Cl. 1941); M. & B. Rubin, Inc., 10 B.T.A. 866 (1928). However, as respondent's principal witness fully admitted, the utilization of the net worth method would be a more reliable indicator of unreported income, and in this case, the Court would regard the bank deposit method as a last resort. Revenue agent Nunzio Donato, in his capacity as a field agent for the internal revenue service, prepared the computation upon the basis of which the respondent made the determination of deficiency. At the outset of his testimony there was the following colloquy: THE COURT: * * * Did you at any time make up a schedule showing total withdrawals on the one hand, and total deposits on the other? THE WITNESS: No. THE COURT: You didn't. You weren't interested in finding out how the total withdrawals and the total *203 deposits balanced out? THE WITNESS: I was - I prepared the schedule of total deposits - THE COURT: Yes. THE WITNESS: - and with respect to withdrawals, where I was able - THE COURT: You just went around to identify withdrawals, then. You didn't, you didn't - what you're saying to me now is that you made - even made no effort to make a net worth verification of what you did. Because it would seem to me, that if you were going to make any effort to make a 622 verification, you'd have to take total deposits on the one hand, and total withdrawals on the other and compare them and see how they looked. THE WITNESS: As I stated originally, I didn't feel the case was strong enough to attempt to establish a net worth and with that respect [sic], no attempt was made. On this basis, the Court is convinced that a net worth computation was not presented by the respondent because it did not serve to substantiate the respondent's claims. It certainly was not a question of inadvertence since this was pointed out to the respondent by the Court on several occasions. When the respondent *204 uses the bank deposit method for the reconstruction of income, evidence of the mere making of a bank deposit is not sufficient by itself to establish the receipt of taxable income. Goe v. Commissioner, 198 F. 2d 851 (C.A. 3, 1952), certiorari denied 344 U.S. 897 (1952); Jesse Ullman Reaves, 31 T.C. 690 (1958); Thomas B. Jones, 29 T.C. 601 (1957). Nevertheless, once the Commissioner has made his determination, the taxpayer has the burden of proving that the various deposits did not result from the receipt of taxable income. Zeeman v. United States, 395 F. 2d 861 (C.A. 2, 1968); Hoefle v. Commissioner, 114 F. 2d 713 (C.A. 6, 1940); T. O. McCamant, 32 T.C. 824 (1959). Thus, the respondent does not have to establish a link between the deposits and an identifiable source of income. O'Dwyer v. Commissioner, 266 F. 2d 575 (C.A. 4, 1959); Goe v. Commissioner, supra.However, in order to rebut the presumption of correctness attaching to the Commissioner's determination, the taxpayer need only come forward with "some reasonable explanation as to the source and nature *205 of the deposit in question." O'Dwyer v. Commissioner, supra at 588. In this case, the petitioner testified that he was not engaged in any income-producing activity during the years in question and that he was, in fact, receiving Social Security. He also explained that the funds which were the source of the unexplained deposits came from the proceeds of the sale of the Sheriff Street property, which were deposited and redeposited in order to put the funds into income-producing accounts. Furthermore, by the respondent's own admission, the total unexplained deposits of the petitioner are not greater than the unexplained withdrawals. Indeed, the conclusion is inescapable that by taking into account the known sources of funds available to the petitioner from interest, dividends, the sale of stock, and the sale of the property of Sheriff Realty Co., Inc., the petitioner, subsequent to the sale of the Sheriff Realty Co., Inc. property on October 21, 1958, had total resources from other than unreported taxable sources which were sufficient to cover all bank deposits during the years in question. The respondent did not account for any activity on the part of the petitioner *206 from which the petitioner could have derived the alleged unreported income, choosing instead to predicate his determination solely on the fact that selected deposits made by the petitioner could not be traced to known withdrawals. While this is entirely permissible and not necessarily fatal to respondent's case, in view of the taxpayer's explanation and the other facts and circumstances discussed above, the respondent's determination with respect to 1959 and subsequent years must be rejected. With respect to deposits of $12,609.31 made prior to October 21, 1958, we have a different situation. The petitioner presented no credible evidence to establish a source of such funds. Petitioner merely testified that the money had been accumulated in prior years. However, this testimony was exceedingly vague. No proof was offered to show where the money had been kept, whether in a bank or otherwise, prior to "surfacing" as deposits in 1958. With respect to these deposits of $12,609.31, the respondent's determination must be sustained. During the taxable years 1958 to 1965, inclusive, petitioner received interest from time to time on the various savings accounts. Presumably he kept no record *207 of such interest. By tracing the bank deposits, and such other information as was available, the respondent made up a schedule of the total interest received by the petitioner. The petitioners did not challenge this determination. The difference between the amounts received and the amounts, if any, reported by the petitioners in their returns are set forth in our findings. Such amounts represented additional taxable income in the respective years involved. 623 During the taxable year 1958, petitioner was also shown to have sold a total of 321 shares of stock of Schenley Industries, Inc. and a total of 300 shares of stock of Pan American World Airways, Inc. None of such sales were reported by petitioners in their return for the taxable year 1958. No records were made available by the petitioners showing gain or loss on such sales. The respondent determined the gain by taking as a basis the market price of the stock at or about the time of acquisition. In our opinion, the respondent's determination was reasonable, and the resulting gain represented additional taxable income not reported by the petitioners in their return for the taxable year 1958. Petitioner was the sole stockholder *208 of 90-4 Sheriff Realty Co., Inc., a corporation organized in 1943 to take title to certain property at 90-4 Sheriff Street. At some later date, petitioner Rose Silverman acquired the outstanding mortgage on the property. On October 21, 1958, the property was sold to the New York City Housing Authority for $135,000. A check was issued to Rose Silverman in the amount of $28,990.51 in payment of the mortgage, and a check for the balance of $103,703.24 was issued to the corporation. Both checks were deposited in the account of the corporation, and the funds were subsequently withdrawn by the petitioner. The respondent claims that withdrawals from the corporation by the petitioner during the taxable year 1958, totaling $133,036.15, constituted a dividend taxable as ordinary income. In the alternative, the respondent contends that the petitioner realized a capital gain in the amount of the withdrawals. Petitioner argues that there was a taxable distribution in liquidation. However, in determining the amount of gain, respondent failed to allow any basis for the stock of the petitioner. In our opinion, it is clear that the sale of the property and withdrawal of funds constituted a de facto *209 liquidation of 90-4 Sheriff Realty Co., Inc. After October 21, 1958, the corporation transacted no business. In due time its charter was forfeited for failure to pay franchise taxes. It is clear, therefore, that the withdrawals made by Joe Silverman constituted distribution in liquidation of 90-4 Sheriff Realty Co., Inc. and should be taxed accordingly. Stamler v. Commissioner, 145 F. 2d 37 (C.A. 3, 1944), affirming a Memorandum Opinion of this Court; and Kennemer v. Commissioner, 96 F. 2d 177 (C.A. 5, 1938) affirming 35 B.T.A. 415 (1937). Since the gain taxable on the distribution in liquidation is treated as a gain from the sale or exchange of property, it is also axiomatic that it is necessary to ascertain the basis of the property (the stock of 90-4 Sheriff Realty Co., Inc.) in the hands of the petitioner. From the facts of record, we have determined this basis to be $25,125. It is also necessary to reduce any distribution on account of the amount of $28,990.51 attributable to the mortgage held by Rose Silverman. Excluding that amount, we have concluded that petitioner realized a longterm capital gain in the amount of $78,578.24 in the *210 year 1958 on account of the withdrawals from 90-4 Sheriff Realty Co., Inc. The Court must also decide whether any part of the underpayment of tax for the years 1958 to 1965, inclusive, is due to fraud within the meaning of section 6653(b)[6] For the reasons stated below, the Court finds the necessary element of fraud for each of the years in question. That finding is likewise determinative of the petitioner's contention that assessment of any deficiencies in question was barred by the statute of limitations. The deficiencies may be assessed at any time under section 6501(c)(1)[7]. *211 In determining that at least a part of the deficiency for each of the years 1958 through 1965 was due to fraud within the meaning of section 6653(b) the Court has considered the record as a whole. When we look to the record, we find that petitioner filed returns which failed to reflect large sums of income in some years and failed to file returns in other years. He caused a return to be filed for 90-4 Sheriff Realty Co., Inc. for the taxable year 1958 which failed to report the sale of its property. In that year, petitioner also failed to report any gain on the sale 624 of stocks and failed to report dividends received on such stocks. He failed to report substantial sums of interest for each of the years involved. The omissions were of such scope and magnitude as to negative any possible claim of mistake or oversight. The conclusion is inescapable that petitioner deliberately failed to report all of his income for each of the years involved, beginning with the year 1958. Decisions will be entered under Rule 50. Footnotes
1. This institution is presently known as the United Mutual Savings Bank.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. Rose Silverman is a party to this proceeding solely by virtue of the joint returns which she filed with her husband for the taxable years 1963, 1964, and 1965.↩
4. This institution is presently known as the Manufacturers Hanover Trust Co.↩
5. Due to a complete lack of proof, the cost of this property has not been reduced by any depreciation allowable from date of its acquisition to March 3, 1943 and the basis has not been increased on account of any payments on the mortgage.↩
6. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * ↩
7. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (c) Exceptions. - (1) False return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.↩