## NICKOLL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6765.

Circuit Court of Appeals, Seventh Circuit.
April 5, 1939.

Rehearing Denied May 18, 1939.

---

[29] Senate Judiciary Report No. 1005, 73rd Congress, 2nd Session.

Maurice Weinstein, of Milwaukee, Wis., for petitioner.

Ellis H. Slack, Sp. Asst. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and Sewall Key, and John J. Pringle, Jr., Sp. Assts. to Atty. Gen., for respondent.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decision of the United States Board of Tax Appeals, filed January 8, 1938, denying petitioner a claimed deductible loss in his income tax for the year 1933.

Petitioner, in 1924, organized the B. E. Nickoll Holding Company with a total paid in capital stock of $100,000 consisting of 1,000 shares of preferred stock of a par value of $100 per share, and common stock of no par value. Soon after its organization, the corporation purchased an office building in Madison, Wisconsin for $300,000, paying therefor $100,000 in cash and assuming a mortgage indebtedness of $200,000.

On April 20, 1932, an involuntary petition in bankruptcy was filed against petitioner. On June 4, 1932, a schedule of assets and liabilities was filed, and among the assets listed were 100 shares of preferred stock of the corporation represented by Certificate No. 110, which were held by the Commercial National Bank of Madison, Wisconsin, as collateral for petitioner's loan. On May 6, 1932, petitioner was adjudicated a bankrupt.

On August 9, 1932, foreclosure proceedings were commenced against the B. E. Nickoll Holding Company, and on August 16, 1932, a receiver was appointed to collect the rents on the building, the only property owned by the corporation. A foreclosure judgment was entered September 29, 1932, and the period of redemption expired September 29, 1933. Prior to the expiration of the redemption period, unsuccessful efforts were made by the petitioner to redeem the property.

Petitioner and his wife filed a joint income tax return on the cash receipts and disbursements basis for the year 1933, in which a deductible loss of $12,300 was claimed, which represented the cost and the loss claimed upon 123 shares of the corporate stock alleged to have been owned by petitioner's wife. The Board found, among other things, that "the petitioner had transferred to his wife as a gift, 23 shares of preferred stock in 1927 and 100 shares in April, 1931, and that the cost of these shares to the petitioner was $12,300." The 23 shares were represented by Certificate No. 108, and the 100 shares by Certificate No. 111.

The capital stock books of the corporation disclosed that its preferred stock was cancelled and surrendered on dates and in amounts as follows: December 31, 1928—577½ shares, November 30, 1929—125 shares, December 13, 1930—50 shares, December 31, 1930—22½ shares, December 31, 1931—125 shares, making a total of 900 shares cancelled and surrendered, and disclosed as outstanding January 1, 1932, 100 shares. A certified public accountant who had made an examination of the corporate books so testified concerning the capital stock book, but at the same time admitted the stock book did not agree with the general corporate ledger and that, according to uncancelled certificates, the total outstanding in capital stock was $22,300. The

income tax return of the B. E. Nickoll Holding Company for 1931, signed and sworn to by petitioner as the President of said company, stated that 100 shares was the amount of capital stock of the company outstanding at the end of the year, 1931. Petitioner testified at the hearing before the Board that the claim for deductible loss was not on account of the 100 shares of stock pledged by him with the Commercial National Bank of Madison, Wisconsin, but that his claim was based upon the 123 shares owned by his wife as a gift from him and that said stock had never been cancelled or placed as collateral for a loan.

■ Both the Commissioner and the Board denied the loss, primarily on the theory that the stock was worthless in 1932, and that the loss, if any, was sustained in that year. The Board also concluded that the stock owned by petitioner in 1933, which had been placed with the Commercial National Bank of Madison, Wisconsin, as collateral, passed to the trustee in bankruptcy and that any recovery on said stock in 1933 would have redounded to the benefit of the petitioner's creditors and not to his benefit or that of his wife. The conclusion that any loss sustained was in the year 1932, rather than 1933, was based upon the theory that the loss took place in the year when the judgment in foreclosure was entered, rather than in the year when the period of redemption expired. It is virtually conceded here by the respondent that the Board was in error in this respect, and that if any loss was sustained, it was in the latter year under the authority of Derby Realty Corp. v. Commissioner, 35 B.T.A. 335; Hawkins v. Commissioner, 34 B.T.A. 1918, affirmed, 9 Cir., 91 F.2d 354. We agree with the law as thus announced, and think under the circumstances presented, that the loss, if any, occurred during the taxable year.

■ This narrows the issue solely to the question: Was petitioner's wife, during the taxable year, the owner of 123 shares of preferred stock of the corporation of the par value of $12,300? Ordinarily, of course, we are bound by the finding of the Board, if supported by substantial evidence, but it is difficult to determine just what the findings of the Board were in this respect. In its opinion we find this statement: "Prior to 1932, it (the corporation) had redeemed and cancelled all of its outstanding preferred stock except 100 shares which were owned by the petitioner's wife." We must admit we are unable to reconcile the latter part of this statement with the rather certain disclosures contained in the record. There can be no question but that 100 shares of the outstanding stock were deposited as collateral with the Commercial National Bank of Madison, Wisconsin, and it is undisputed that petitioner sustained no loss in connection with this stock. In fact, the loss is not claimed with reference thereto. So, we are unable to understand how the Board could find that petitioner's wife owned the 100 shares of outstanding stock. The wife must have owned 123 shares or none. If the former, there must have been outstanding, 223 shares—if the latter, it follows her stock must have been cancelled and that she was the owner of no stock in the taxable year. The Board further states "but the corporate records show only 100 shares outstanding. The Board accepts the correctness of the corporate records." These outstanding shares, however, without any doubt, were in the possession of the bank as collateral.

■■ The situation is such that we think we must determine from the record the question in issue, though it be one of fact. The burden was upon petitioner to sustain the claim made that his wife was the owner of 123 shares. The corporate stock book shows to the contrary, which, as stated, discloses that all the stock had been cancelled and surrendered excepting 100 shares. The statement made by the petitioner, as President of the Corporation, in its return for 1931, to the effect that only 100 shares of the corporate stock were outstanding, is likewise inconsistent with the claim which the petitioner now urges. It is further significant to note that petitioner's wife did not testify, nor were Certificates 111 or 108, representing the stock which petitioner claims his wife owned in 1933, produced at the hearing. He admitted he didn't know where the certificates were and hadn't seen them for a couple of years. The failure to produce these certificates, so vital and important in support of petitioner's contention, is, to us, more consistent with the disclosure made by the capital stock book to the effect that such certificates had been cancelled and surrendered, than it is with the contention that they were in existence.

We, therefore, conclude that the petitioner, by his testimony, did not sustain

the burden cast upon him in face of the contrary disclosures as shown by the documentary evidence and other facts proven in the hearing. The decision of the Board of Tax Appeals is affirmed.