PEARL ZARNOW, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 107–65. Filed May 24, 1967.

Pearl Zarnow, pro se.
*Nelson E. Shafer*, for the respondent.

SIMPSON, *Judge:* The respondent determined a deficiency of $6,645.21 in the tax of petitioner and her late husband for 1960, consisting of $6,497 in income tax and $148.21 in self-employment tax. He further determined that an addition to such tax of $332.26 was applicable pursuant to section 6653(a) of the Internal Revenue Code of 1954.[1] The issues for decision in this case are: (1) Whether the failure of the respondent to act on an application for tentative carryback adjustment within 90 days prevents his assertion of a deficiency for the year of the alleged net operating loss; (2) whether the petitioner has met her burden of proving the respondent's determination of deficiency to be erroneous; (3) whether the petitioner is entitled to a deduction for worthless stock or a bad debt for the taxable year 1960; and (4) whether the addition to tax provided by section 6653(a) applies to self-employment tax.

#### FINDINGS OF FACT

Some of the facts were stipulated and those facts are so found.

The petitioner, Pearl Zarnow, resided in Des Moines, Iowa, on the date when the petition in this proceeding was filed. For the taxable year 1960, she and her late husband, Herman S. Zarnow, filed a joint Federal income tax return with the district director of internal revenue at Des Moines, Iowa.

In his notice of deficiency sent by certified mail on October 23, 1964, the respondent determined that the petitioner and her husband omitted several items of gross receipts in computing their taxable income, and

---

[1] All statutory references are to the Internal Revenue Code of 1954.

that they had claimed several deductions not allowable in whole or in part. They claimed a net operating loss from Herman's business in the amount of $5,884.65, based upon gross receipts of $32,290.48. The respondent determined that the correct gross receipts of such business for 1960 were $51,601.85. In his determination, respondent included the amount of $4,180.84 in unidentified bank deposits as additions to gross receipts. However, a portion of these deposits has been conceded by the respondent not to have been gross income, and this concession will be given effect in a Rule 50 computation. The respondent further determined that the Zarnows were liable for self-employment tax in the amount of $148.21 and an addition to tax under section 6653(a) of $332.26, 5 percent of the entire underpayment including the self-employment tax.

During the year 1960, Herman was a real estate broker and maintained three bank accounts which he used for business purposes. He died on December 1, 1964.

On July 1, 1960, Herman organized a corporation named Hank Zarnow, Inc., to build homes which he could sell as a broker. By March 14, 1961, Hank Zarnow, Inc., was insolvent; however, as late as December 15, 1960, Herman was advancing funds to the corporation. From the date of incorporation, the corporation used one of Herman's bank accounts titled "Hank Zarnow Building Account." Such account had been used as a business account for Herman's individual business before July 1, 1960.

On June 3, 1960, Herman paid $1,399 for certain lots in Southern Heights in the city of Des Moines, Iowa. This payment was made from his personal account, and on July 8, 1960, he reimbursed his personal account for $1,399 by drafting a check to that account from his building fund account. The respondent included this deposit in Herman's personal account as a part of Herman's gross receipts.

On July 28, 1961, petitioner and her late husband filed an application for tentative carryback adjustment claiming a net operating loss for 1960 and requesting that the carryback be applied to taxes due for the taxable year 1959. The respondent failed to act upon that application within 90 days of its receipt.

On September 24, 1963, the petitioner and her husband executed a consent which extended to December 31, 1964, the period within which an assessment for the taxable year 1960 could be made.

OPINION

The petitioner's first argument is that the respondent's failure to act upon their application for a tentative carryback adjustment, based upon Herman's claimed net operating loss for 1960, bars the respondent from later determining a deficiency for the year of the alleged loss. She argues that section 6411(b) grants the respondent only 90 days in

which to act upon such an application, and that if he fails to act within that period, the section operates as a statute of limitations preventing any further assessment or determination of a deficiency.[2]

Section 6411 does not set forth the consequences of a failure by the respondent to act within the 90-day period on an application for a tentative carryback adjustment, but it seems clear to us that his failure to act during that time does not prevent him from later determining a deficiency for the year of the alleged loss. Section 6411 provides merely a tentative carryback adjustment; if the respondent allows an adjustment which he later determines was in error, he may subsequently correct such error. See sec. 6213(b)(2) and *Blansett* v. *United States*, 283 F. 2d 474 (C.A. 8, 1960). Since the respondent's actions within the 90-day period are not final, but merely tentative, we are unwilling to conclude that his failure to act should be conclusive. There may be an omission in that the statute fails to provide any sanction for the respondent's failure to act within the 90-day period, but we find no indication that the missing sanction is to be provided by holding that such a failure to act prevents him from determining a deficiency for the year of the alleged loss.

The period during which respondent could determine a deficiency in this case is controlled by section 6501(a) and (c)(4), and the petitioner's consent to assessment at any time before December 31, 1964.[3]

---

[2] SEC. 6411. TENTATIVE CARRYBACK ADJUSTMENTS.

(b) ALLOWANCE OF ADJUSTMENTS.—Within a period of 90 days from the date on which an application for a tentative carryback adjustment is filed under subsection (a), or from the last day of the month in which falls the last date prescribed by law (including any extension of time granted the taxpayer) for filing the return for the taxable year of the net operating loss from which such carryback results, whichever is the later, the Secretary or his delegate shall make, to the extent he deems practicable in such period, a limited examination of the application, to discover omissions and errors of computation therein, and shall determine the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the examination, except that the Secretary or his delegate may disallow, without further action, any application which he finds contains errors of computation which he deems cannot be corrected by him within such 90-day period or material omissions. Such decrease shall be applied against any unpaid amount of the tax decreased (including any amount of such tax as to which an extension of time under section 6164 is in effect) and any remainder shall be credited against any unsatisfied amount of any tax for the taxable year immediately preceding the taxable year of the net operating loss the time for payment of which tax is extended under section 6164. Any remainder shall, within such 90-day period, be either credited against any tax or installment thereof then due from the taxpayer, or refunded to the taxpayer.

[3] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * *

\* \* \* \* \* \* \*

(c) EXCEPTIONS.—

\* \* \* \* \* \* \*

(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

Within 3 years after the date on which the petitioner and her husband filed their income tax return for 1960, they agreed to extend to December 31, 1964, the time within which an assessment could be made for 1960. Nothing appears in this record which would revoke or nullify that consent. Thus, we find that the notice of deficiency was sent to the petitioner in due time.

The petitioner has challenged the respondent's reconstruction of Herman's gross receipts for 1960 by arguing, first, that many items in the computation were not gross receipts, and, second, that the reconstruction was an improper application of the bank deposit method of income reconstruction.

The contention that many items in the respondent's computation were not gross receipts must be rejected. The petitioner's evidence consists only of some canceled checks showing that Herman transferred funds from one of his accounts to another of his accounts. The petitioner has the burden of proving the respondent's computation to be erroneous. Rule 32, Tax Court Rules of Practice; *Bernstein* v. *Commissioner*, 267 F. 2d 879 (C.A. 5, 1959), affirming a Memorandum Opinion of this Court. Nevertheless, we have carefully examined the petitioner's evidence and the respondent's computation to determine if there was any evidence of duplication of items or any inclusion of items which were not income. However, we could not find that these funds had previously been taken into gross receipts by Herman during 1960 or any other year. There was no showing that these funds were taken into gross receipts more than once by the respondent in his recomputation of gross receipts. No books were introduced, and no explanations of any transactions were offered at the trial. In fact, the petitioner testified that she had no personal knowledge concerning the items represented by the unexplained bank deposits or concerning the checks which on their face indicated that they were the result of lot sales. Upon the basis of this record, we must find that the petitioner has failed to carry her burden of proof.

We are, however, able to find that the respondent has erroneously included one item in his computation of gross receipts. From the canceled checks and the notations on the face of the checks, we have found that Herman paid $1,399 for certain lots in Des Moines with a check drawn on his personal account. When he reimbursed his personal account for this identical sum, 1 month later, he noted that fact on the face of the check drawn from his business account for such reimbursement. The respondent counted the deposit to his personal account as an item of gross receipts. We find that this item in the reconstruction was not an item of gross receipts and should be omitted.

We cannot accept the petitioner's argument that the respondent's recalculation of Herman's gross receipts is an erroneous application

of the bank deposit method of income reconstruction, because it does not appear from the record that such a method was used, or that under these facts, such a method was improper. In his opening statement, the respondent denied that he had reached his determination of Herman's gross receipts by analyzing and taxing all bank deposits. The hearing in this case consisted mostly of the petitioner's testimony and added no further information on how the respondent arrived at his recomputation of gross receipts. We know that many items in his recomputation represented unexplained bank deposits, and, generally, it may be inferred that such deposits are items of gross income, absent some explanation. *William O'Dwyer*, 28 T.C. 698 (1957), affd. 266 F. 2d 575 (C.A. 4, 1959), certiorari denied 361 U.S. 862 (1959). That inference is particularly reasonable in this case, because the deposits were made in the account of a businessman who used all of his bank accounts for business purposes. Furthermore, even assuming that the respondent had used the bank deposit method of income reconstruction, such a procedure is proper in this case. We have no evidence showing that Herman kept books, or if he did, what such books contained. 2 Mertens, Law of Federal Income Taxation, sec. 12.12, p. 56. All we have to work with are some canceled checks and deposit slips and the petitioner's own admission that Herman used all of his accounts for business purposes. In the face of the facts in this record, we cannot accept the petitioner's argument. Cf. *Albert Gemma*, 46 T.C. 821 (1966).

In addition, the petitioner claims a deduction for worthless stock and a deduction for business bad debts in an amount sufficient to offset the additions to income determined by the respondent.

We are unable to find that Herman's stock in Hank Zarnow, Inc., was worthless in 1960 or that it can give rise to a $1,000 deduction for that year. From the fact that the corporation was insolvent on March 14, 1961, we might infer that the stock was worthless in 1960. But we cannot draw that inference in this case, because as late as December 15, 1960, Herman was still advancing the corporation funds, thereby suggesting that the stock was not worthless in late 1960. Aside from the difficulty in determining when the stock was worthless, the petitioner has not shown how much stock was owned, how much it cost, or whether such stock was paid for. Without such information, we cannot determine whether the petitioner's claim for a $1,000 deduction is valid. The burden of proving the elements of a deduction for worthless stock is on the petitioner, *Nickoll* v. *Commissioner*, 103 F. 2d 619 (C.A. 7, 1939), affirming a Memorandum Opinion of this Court; *Hobby* v. *Commissioner*, 97 F. 2d 731 (C.A. 5, 1938), affirming a Memorandum Opinion of this Court, and she has failed to carry that burden.

The same result follows with respect to the petitioner's claim for a bad debt deduction—it cannot be allowed because the petitioner has not carried her burden of proof. This record contains no evidence showing whether the debts were business or nonbusiness debts, whether they were in fact bona fide loans, or when, if ever, they became worthless. Cf. *Guffey* v. *United States*, 339 F. 2d 759 (C.A. 9, 1964).

The petitioner's last argument is that the 5-percent penalty for underpayment of taxes due to negligence or intentional disregard of rules and regulations does not apply to the self-employment tax.

The 5-percent addition to tax provided by section 6653(a) [4] applies to all taxes imposed by subtitle A of the Internal Revenue Code of 1954. The self-employment tax is imposed by chapter 2 of subtitle A, and is thus within the express terms of section 6653(a). The legislative history of section 6653(a) indicates that it was intended to be applied to all taxes on income, and the regulations expressly provide that the penalty is applicable to the self-employment tax. H. Rept. No. 1337, 83d Cong., 2d Sess., p. A419 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 591, 592 (1954); sec. 1.1401-1(a), Income Tax Regs. Moreover, the petitioner has failed to show that her underpayment of tax was not due to negligence or intentional disregard of rules and regulations, or that the self-employment tax is inapplicable in this case. Cf. *David Courtney*, 28 T.C. 658 (1957), acq. 1957-2 C.B. 4. We find that the addition to tax applies.

In order to reflect our resolution of the issues and to reflect the concessions made by the respondent,

*Decision will be entered under Rule 50.*

---

[4] SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.