T.C. Memo. 2000-263

UNITED STATES TAX COURT

MICHAEL AND KAZUKO YANG, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11158-99.                      Filed August 17, 2000.

John E. Cicero II, for petitioners.

Anne S. Daugharty and William A. McCarthy, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Respondent determined deficiencies in
petitioners' Federal income taxes and penalties as follows:

|  |  | Accuracy-Related Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 1995 | $27,031 | $5,406.20 |
| 1996 | 68,194 | 13,638.80 |

The issues for decision are: (1) Whether the amounts deposited into petitioners' bank accounts are income or nontaxable gifts; (2) whether respondent counted certain deposits twice when determining petitioners' deficiencies; (3) whether petitioners are liable for the self-employment tax under section 1401;[1] and (4) whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a).

                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners, Mr. Yang and Mrs. Yang, are husband and wife and resided in Bellevue, Washington, at the time they filed their petition.

Mr. Yang was born in Taiwan and became a U.S. citizen in 1985. Mr. Yang worked as a programmer/analyst for Mattel Electronic in Los Angeles, California, from 1976 to 1982, a system programmer for First Interstate Bank of California from 1982 to 1987, and a programmer specialist for Hughes Aircraft in Los Angeles from 1987 to 1992. Mr. Yang also periodically provided programming consulting services. Mrs. Yang has been a homemaker since 1986. Mr. Yang owns a 3- to 4-percent interest

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

in a family-operated factory in Taiwan.  Mr. Yang's father passed away in 1997.

In 1991, Mr. Yang incorporated "Torrance Consulting, Inc." (Torrance Consulting) under the laws of the State of California for the purpose of engaging in contracting work.  In 1993, petitioners sold their home in California and moved to Washington.  On June 8, 1993, petitioners signed a home loan application for residential property in Bellevue, Washington. The application was signed under penalty of perjury.[2]  In the application, petitioners reported gross monthly income of $7,000 from Torrance Consulting and gross monthly income of $1,000 from dividends/interest.  The address for Torrance Consulting that petitioners put on their application was the same as their home address.  Petitioners also reported owning a business with a net

---

[2]The application the petitioners signed was a Freddie Mac Form 65/Rev. 10/92 which contained the following certification above petitioners' signature:

Certification: I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

worth of $400,000.  Mr. Yang was listed as president of Torrance Consulting, as self-employed, and as working at Torrance Consulting for the previous 1-1/2 years.  The loan application also contained the following notation next to Mr. Yang's employment information:  "Borrower's business can be located anywhere he sells overseas and has no storefront."  In a letter attached to the loan application, Mr. Yang stated:

> I've been working as a computer systems consultant for the past one and half years.  My business clients are those medium to large-sized manufacturers located in Taiwan and China.

> In trying to help them modernize their computer systems, I found myself spending more and more time overseas, and there is really no compelling reason to live in L.A. anymore.

> In addition, by moving to Seattle area, with Microsoft close by, I hope to gain earlier insight of the latest technology and thus better serve my customers.

On June 14, 1996, petitioners signed, under penalty of perjury, a loan application to refinance the 1993 home loan.[3]  In the application, they reported gross monthly income of $7,000 from "Summit Consulting, Inc." (Summit Consulting) and net monthly income of $5,000 for business in Taiwan.  Petitioners also reported owning a business with a net worth of $200,000.  Mr. Yang was listed as president of Summit Consulting, as self-employed, and as working at Summit Consulting for the previous 5

---

[3]The 1996 loan application was also on a Freddie Mac Form 65/Rev. 10/92.

years.  The address for Summit Consulting that petitioners put on their application was the same as their home address.  In an attached letter, Mr. Yang made reference to a $63,985 transfer "from my business account in Taiwan."

During 1995 and 1996, petitioners had bank accounts at the Bank of Taiwan, in Taiwan, and at Seafirst Bank, in Washington. The Bank of Taiwan account was in Mr. Yang's name.  This account allowed persons other than petitioners to access the account through the use of a passbook.  Mr. Yang also withdrew funds from the Bank of Taiwan account during his frequent visits to Taiwan between 1995 and 1999.  During 1996, funds were withdrawn from the Bank of Taiwan account and wire transferred to the Seafirst Bank account.

During 1995 and 1996, the following deposits were made to Mr. Yang's account at the Bank of Taiwan:[4]

---

[4]The conversion rate in effect for the years 1995 and 1996 was NT$27.54 to 1 U.S. dollar.  U.S. dollar amounts are rounded to the nearest dollar.

| Date of Deposit | Amount | |
| --- | --- | --- |
| | Taiwanese Dollars | U.S. Dollars |
| 5/30/95 | NT$2,000 | $73 |
| 6/21/95 | 5 | 0 |
| 8/31/95 | 70,602 | 2,564 |
| 9/14/95 | 70,000 | 2,542 |
| 9/29/95 | 81,375 | 2,955 |
| 10/17/95 | 81,375 | 2,955 |
| 10/27/95 | 230,000 | 8,351 |
| 12/01/95 | 162,750 | 5,910 |
| 12/21/95 | 1,646 | 60 |
| Totals (1995) | NT$699,753 | [1]$25,409 |
| | | |
| 1/29/96 | NT$81,375 | $2,955 |
| 2/28/96 | 81,375 | 2,955 |
| 3/08/96 | 78,750 | 2,859 |
| 4/12/96 | 78,750 | 2,859 |
| 4/15/96 | 602,990 | 21,895 |
| 5/10/96 | 71,250 | 2,587 |
| 6/15/96 | 71,250 | 2,587 |
| 6/21/96 | 3,341 | 121 |
| 8/07/96 | 142,500 | 5,174 |
| 9/16/96 | 67,500 | 2,451 |
| 10/15/96 | 67,500 | 2,451 |
| 11/01/96 | 67,500 | 2,451 |
| 12/01/96 | 67,500 | 2,451 |
| 12/21/96 | 2,227 | 81 |
| Totals (1996) | NT$1,483,808 | [2]$53,878 |

[1] This figure is $1 more than the sum of the components due to rounding off of the U.S. dollar amounts.

[2] This figure is $1 less than the sum of the components due to rounding off of the U.S. dollar amounts.

During 1995 and 1996, the following withdrawals were made from Mr. Yang's account at the Bank of Taiwan:[5]

[5] The conversion rate in effect for the years 1995 and 1996 was 27.54 Taiwanese dollars to 1 U.S. dollar. U.S. dollars amounts are rounded off to the nearest dollar.

| Date of Withdrawal | Amount | |
|---|---|---|
| | Taiwanese Dollars | U.S. Dollars |
| 9/13/95 | NT$70,000 | $2,542 |
| 10/23/95 | 230,000 | 8,351 |
| 11/02/95 | 10,007 | 363 |
| 11/04/95 | 90,000 | 3,268 |
| 11/06/95 | 5,007 | 182 |
| 12/11/95 | 160,000 | 5,810 |
| Totals (1995) | NT$565,014 | $20,516 |
| | | |
| 3/01/96 | NT$201,200 | $7,306 |
| 3/18/96 | 10,000 | 363 |
| 3/27/96 | 10,007 | 363 |
| 3/28/96 | 10,007 | 363 |
| 4/01/96 | 20,000 | 726 |
| 4/23/96 | 10,000 | 363 |
| 4/24/96 | 741,840 | 26,937 |
| 4/25/96 | 3,007 | 109 |
| 4/25/96 | 2,007 | 73 |
| 8/23/96 | 326,600 | 11,859 |
| 11/01/96 | 179,400 | 6,514 |
| Totals (1996) | NT$1,514,068 | [1]$54,977 |

[1]This figure is $1 more than the sum of the components due to rounding off of the U.S. dollar amounts.

During 1995 and 1996, the following amounts were wire transferred and deposited into petitioners' account at Seafirst Bank:[6]

| Date of Deposit | Payor/Source | Amount (In U.S. Dollars) |
|---|---|---|
| 3/17/95 | Yang | $49,968 |
| 11/06/95 | Yang Fan Hsing | 36,700 |
| Total (1995) | | $86,668 |
| | | |
| 3/01/96 | Yang Yu Mei She | $19,985 |
| 4/12/96 | Michael Yang | 6,528 |
| 4/24/96 | Yang Fen Shine | 63,985 |
| 8/23/96 | Yang You Mei Sheue | 29,985 |
| 11/01/96 | Yang You Mei Shue | 49,980 |
| Total (1996) | | $170,463 |

---

[6]The U.S. dollar amounts are rounded to the nearest dollar.

For the years 1995 and 1996, Mr. Yang personally prepared petitioners' Federal income tax returns.  On their 1995 return, petitioners reported total gross income of $1,903 ($1,716 interest and $187 capital gain).  On their 1996 return, petitioners reported total gross income of $3,660 ($2,872 interest and $788 capital gain).  The returns listed Mr. Yang's occupation as unemployed, reported that petitioners had no interest in a foreign bank account, and reported no income from Torrance Consulting, Summit Consulting, or Mr. Yang's interest in the family operated factory in Taiwan.  On March 19, 1999, respondent issued a notice of deficiency for the years 1995 and 1996.

                              OPINION

Respondent's notice of deficiency determined unreported income based on the bank deposits method of reconstructing income.  Respondent's determination is entitled to the presumption of correctness, and petitioners bear the burden of proving that such determination is incorrect.  See Rule 142(a); Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977).

Petitioners claim that the amounts deposited to their bank accounts were nontaxable gifts from Mr. Yang's father.

Section 61(a) provides that gross income includes all income from whatever source derived, unless otherwise specifically excluded. Section 102(a) excludes the value of property acquired by gift from gross income. For income tax purposes, a gift must proceed from a detached and disinterested generosity, motivated by affection, respect, admiration, charity, or the like. See Duberstein v. Commissioner, 363 U.S. 278, 285 (1960).

Petitioners rely on their own testimony and that of Mr. Yang's brother, Fang Long Yang. Mr. Yang testified that Fang Long Yang opened the Bank of Taiwan account and controlled it for Mr. Yang by making deposits and wire transferring money to the Seafirst Bank account. Fang Long Yang testified that he did not personally set up the Bank of Taiwan account and that he did not know the details surrounding the wire transfers to Mr. Yang. Mr. Yang and Fang Long Yang claim that their father made equal gifts to his four sons during 1995 and 1996. The alleged gifts to Mr. Yang in 1995 and 1996 were substantial ($112,077 and $224,340), yet Fang Long Yang could not remember, or even estimate, the amounts he received or the amounts petitioners received. We are not required to accept petitioners' or Fang Long Yang's self-serving testimony, where it is improbable, unreasonable, or questionable. See Tokarski v. Commissioner, supra at 77; Clower v. Commissioner, T.C. Memo. 1990-74. In light of the evidence,

including inconsistencies in their testimony, we do not find Mr. Yang or Fang Long Yang to be credible with respect to this issue.

Petitioners' explanation for the bank deposits is that all of the money deposited was the proceeds of gifts. Petitioners testified that neither of them was gainfully employed or engaged in business after Mr. Yang discontinued his employment at Hughes Aircraft.

However, in their loan applications, signed under penalty of perjury, petitioners told a different story. They reported earning substantial amounts of business income, and Mr. Yang was classified as self-employed. The Bank of Taiwan account was referred to as a "business account",[7] Mr. Yang admitted spending an increasing amount of time overseas for work, and he stated that he had manufacturing clients in Taiwan. Petitioners claim that they misrepresented their financial information on the loan applications in order to get the loans approved and inadvertently failed to disclose the Bank of Taiwan account on their income tax returns. Based on the contradictory evidence, we do not find petitioners' explanations to be persuasive. Accordingly, with the exceptions noted below, we hold that the amounts deposited into petitioners' bank accounts in 1995 and 1996 are taxable income.

---

[7]Petitioners failed to report their interest in the Bank of Taiwan account on their 1995 and 1996 tax returns.

Petitioners contend that substantially all the funds deposited into their Bank of Taiwan account in 1996 were subsequently wire transferred to their Seafirst Bank account. Petitioners bear the burden of proving such duplicate deposits. See Estate of Mason v. Commissioner, supra at 657; Zarnow v. Commissioner, 48 T.C. 213, 216 (1967).

Petitioners concede that there are no duplications for 1995. Mr. Yang testified that 90 to 99 percent of the amounts withdrawn from the Bank of Taiwan account in 1996 were transferred to the Seafirst Bank account and specifically identified the duplications. In 1996, the following transactions occurred on the same days with respect to petitioners' bank accounts:[8]

| Date | Withdrawal (Bank of Taiwan) | Deposit (Seafirst Bank) |
|---|---|---|
| 3/01/96 | $7,306 | $19,985 |
| 4/24/96 | 26,937 | 63,985 |
| 8/23/96 | 11,859 | 29,985 |
| 11/01/96 | 6,514 | 49,980 |

Mr. Yang testified that a family member would make the withdrawal from the Bank of Taiwan account, add in more money, and then wire this larger amount to the Seafirst Bank account. Based on Mr. Yang's explanation of the differences in amounts and the corresponding nature of the withdrawals and deposits, we are persuaded that respondent's determination contained duplications. We hold that the amounts withdrawn from the Bank of Taiwan account on March 1, 1996, April 24, 1996, August 23, 1996, and

---

[8]Amounts are in U.S. dollars.

November 1, 1996, in the amounts of $7,306, $26,937, $11,859, and $6,514[9], respectively, must be subtracted from respondent's bank deposits determination of income for 1996.

Section 1401 imposes a tax on the "self-employment income" of every individual. Section 1402(b) defines "self-employment income" as "net earnings from self-employment". Section 1402(a) generally defines "net earnings from self-employment" as gross income derived by an individual from any trade or business carried on by such individual, less deductions allowed. Petitioners bear the burden of proving that they are not liable for the self-employment tax. See Rule 142(a).

On their 1993 and 1996 loan applications, petitioners reported owning businesses, listed the same address for both their home and businesses, and classified Mr. Yang as self-employed. Petitioners claim that they misrepresented information on the loan applications, that Mr. Yang has been unemployed since 1992, and that they have never owned a business. On the basis of the evidence in the record, we do not find petitioners' testimony persuasive and hold that they are liable for the self-employment tax for 1995 and 1996.

Section 6662(a) imposes a penalty equal to 20 percent of the portion of an underpayment of tax attributable to a taxpayer's negligence, disregard of rules or regulations, or substantial

---

[9]Amounts are rounded to the nearest dollar.

understatement of income tax.  See sec. 6662(a), (b)(1), and (b)(2).  "Negligence" has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c).  An understatement is "substantial" if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return.  Sec. 6662(d)(1) and (d)(2).  Respondent's determination that petitioners were negligent is presumptively correct, and the burden is on petitioners to show a lack of negligence.  See <u>Hall v. Commissioner</u>, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337.  The accuracy-related penalty applies unless petitioners demonstrate that there was reasonable cause for the underpayment and that they acted in good faith with respect to the underpayment.  See sec. 6664(c).

Petitioners have not established that their underpayments for 1995 and 1996 were due to reasonable cause or a lack of negligence.  Accordingly, we hold that petitioners are liable for the accuracy-related penalty for 1995 and 1996.

<u>Decision will be entered under Rule 155</u>.